SORONDO, Judge,
specially concurring.
I agree with the majority’s conclusion that the Circuit Court’s present system of deferring the indigency determination on all criminal defendants until the time of arraignment is contrary to the provisions of section 27.52(l)(a), Florida Statutes (1997), and Florida Rule of Criminal Procedure 3.130(c)(1). I write separately to address the apparent conflict between the statute and the rule, and, in the interest of fairness, to elaborate on the present system.
Section 27.52(2) reads as follows:
The court may not appoint the public defender to represent, even on a temporary basis, any person who is not indigent.
(Emphasis added). Rule 3.130(e)(1) states:
(c) Counsel for Defendant
(1) Appointed Counsel. If practicable, the magistrate should determine prior to the first appearance whether the defendant is financially able to afford counsel and whether the defendant desires representation. . When the magistrate determines that the defendant is entitled to court-appointed counsel and desires counsel, the magistrate shall immediately appoint counsel. This determination must be made and, if required, counsel appointed no later than the time of the first appearance and before any other proceedings at the first appearance. If necessary, counsel may be appointed for the limited purpose of representing the defendant only at first appearance or at subsequent proceedings before the magistrate.
(Emphasis added). Contrary to the provision of the statute that the court may not appoint the public defender to a non-indigent defendant on a temporary basis, the rule does contemplate that, “if necessary,” the magistrate has the discretion to appoint counsel to a non-indigent defendant.[1] Although the rule is not particularly clear on this point, I can see no other purpose for the last sentence, since, if a determination of indigency is made, there would be absolutely no reason to make anything less than a permanent appointment. The majority cites two examples of instances where such a “temporary” appointment can be made. It is the carte blanche appointment of the public defender in every case which clearly undermines the intent and spirit of the rule. Nevertheless, the provision of section 27.51(2), Florida Statutes (Í997), which states that “the court may not appoint the public defender to represent, even on a temporary basis, any person who is not indigent,” (emphasis added), is in conflict with Rule 3.130(c)(1).
The Florida Supreme Court is authorized to promulgate rules of procedure. See Johnson v. State, 336 So.2d 93, 95 (Fla.1976). The Florida Legislature can only enact substantive law. See Benyard v. Wainwright, 322 So.2d 473, 475 (Fla.1975). In Benyard, the Supreme Court explained the difference between substance and procedure:
Substantive law prescribes the duties and rights under our system of government. The responsibility to make substantive law is in the legislature within the limits of the state and federal constitutions. Procedural law concerns the means and method to *1086 apply and enforce those duties and rights. Procedural rules concerning the judicial branch are the responsibility of this Court, subject to repeal by the legislature in accordance with our constitutional provisions.
Id. at 475. The appointment of counsel to those accused of committing crimes is one of the judicial functions which enforces the fundamental right to counsel in the criminal process. As such, the procedures established for the appointment of counsel are within the exclusive jurisdiction of the Supreme Court. Consequently, in as much as section 27.51(2) conflicts with Rule 3.130(e)(1) on an issue of procedural law, the rule must prevail.
Although not necessary for the resolution of this case, I am compelled to provide a factual background for the issue presented in this proceeding. Some time ago, the Chief Judge of the Eleventh Judicial Circuit determined that criminal defendants who were not indigent were being represented by the public defender. In order to curtail, if not eliminate, this problem, the Circuit Court initiated the system which is being challenged in this case.
The court created the Indigence Screening Unit (ISU). The purpose of this unit is to provide the information needed by the court in order to make a final determination of indigency for purposes of appointing the public defender. Defendants are interviewed by ISU Indigency Examiners (screeners) prior to and during bond hearings, jail arraignments and juvenile soundings. The unit operates seven days per week from 8:00 a.m. to 5:00 p.m. The staff consists of one supervisor and eight screeners. In order to maximize efficiency the screeners are deputized, which enables them to administer oaths to all defendants and to act on behalf of the Clerk of the Court. Additionally, the screeners are multilingual so that they can communicate in the three most common languages spoken in South Florida — English, Spanish and Creole.[2]
Every ■ morning, prisoners who were arrested during the previous 24 hours are brought from the Interim Central Detention Center (ICDC), Turner Guilford Knight Correctional Center (TGK), Dade County Stockade, Metro West Detention Center, Jackson Memorial Hospital — Ward D, Women’s Detention Center, and various parts of the Dade County Jail to holding cells in the Dade County Jail. The defendants are transported from these seven facilities and arrive at the holding cells at 9:00 a.m., one hour before the start of first appearances. During this hour the screeners provide every defendant with a financial affidavit. The defendants are then asked to fill out the affidavits.[3]
Because of the enormous volume of cases[4] and the small number of screeners,[5] the task of getting the affidavits completed and executed under oath is monumental.
In an effort to balance the competing interests in the system, i.e., the need to appoint counsel to indigent defendants at the first appearance, securing independent corroboration of a defendants’ representations on their affidavits and dealing with the enormous volume of cases, the Chief Judge directed that *1087 all defendants be temporarily appointed the public defender for the initial appearance and subsequent appearances before the magistrate. During the 21 day period before arraignment, the screeners investigate the veracity of the affidavits so that the Circuit Judge assigned to the case can make a final, informed decision on the eligibility for appointed counsel at the arraignment.
This system represents a valiant effort to reconcile the competing interests listed above. The only aspect of the system which presents a problem is the across the board appointment of the public defender without a preliminary determination of indigency. Although our decision in this case may aggravate the many burdens which already inhere in the system, I can find no way to reconcile the caríe blanche appointment of the public defender to non-indigent defendants with the applicable law.[6]

. As I read section 27.52, all criminal defendants are "not indigent” until and unless a judge of competent jurisdiction affirmatively finds them to be "indigent.”

. Special provisions have to be made with the Office of the Court Interpreters for interpreters in other languages.

. This is usually done during a period of time which can only be described as controlled chaos. The prisoners are brought into the chapel of the Dade County Jail at 9:00 a.m. They remain in the chapel during the initial appearances which are conducted by video link to the courtroom across the street. The magistrate is in the courtroom along with an assistant state attorney, assistant public defender and any friends or relatives of the defendants who choose to attend. The defendants are handed the affidavits and then listen to video taped presentations by judges who advise them of their constitutional rights and inform them of the nature and purpose of the affidavits. The video taped instructions are played first in English, then in Spanish and then in Creole. After the videos are played the defendants use whatever time is left before the hearings begin at 10:00 a.m. to fill out the affidavits. During this time the screeners try to answer questions and assist with the completion of the affidavits.

. Screeners interview approximately 2500 defendants per month during felony bond hearings, 1200 defendants per month during misdemeanor jail arraignments, 500 defendants per month during domestic violence hearings, and 700 parents or legal guardians per month during juvenile soundings.

. As noted above there are only eight screeners and one supervisor. Because the unit operates 365 days per year, it is reasonable to assume that all nine are not on duty all of the time.

. One possible solution to the problem might be to have the ISU personnel provide the first appearance magistrates with the affidavits completed by the defendants just before the commencement of the hearings. The magistrates could then make the appointments in accordance with both the statute and the rule. The additional time necessary to transport the affidavits to the courtroom could possibly be secured by beginning the first appearance hearings at 10:30 am or, alternatively, by having the Department of Corrections bring the prisoners to the jail’s video room at 8:00 or 8:30 a.m. The verification process can then continue, unchanged. If it ultimately becomes apparent that the defendant was less than candid on his or her affidavit, the judge assigned to the case can discharge the public defender at the arraignment.